**Slip Op. 07-1**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| CARPENTER TECHNOLOGY CORPORATION, CRUCIBLE SPECIALTY MATERIALS CORPORATION, and ELECTROALLY CORPORATION, |
| Plaintiffs, |
| v. |
| UNITED STATES, |
| Defendant |
| and |
| BGH EDELSTAHL FREITAL GMBH, BGH EDELSTAHL LIPPENDORF GMBH, BGH EDELSTAHL LUGAU GMBH, and BGH EDELSTAHL SIEGEN GMBH |
| Defendants-Intervenor |

**Before: Gregory W. Carman, Judge**

Consol. Court No. 06-00286

[Plaintiffs' application to file its motion for preliminary injunction out-of-time is denied; in any event, Plaintiffs' motion for preliminary injunction would otherwise be denied.]

Kelley Drye Collier Shannon (Robin H. Gilbert) for Plaintiffs.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michael D. Panzera), for Defendant.

deKieffer & Horgan (Marc E. Montalbine, James K. Horgan, and Merritt R. Blakeslee) for Defendants-Intervenor.

Consol. Court No. 06-00286                                        Page 2

January 3, 2007

OPINION AND ORDER

**Carman, Judge:**  The matter before this Court is Plaintiffs' out-of-time Partial Consent Motion for Preliminary Injunction ("Motion for Preliminary Injunction") to enjoin the liquidation of entries covered by the administrative review that is the underlying subject of this litigation. Because Plaintiffs, Carpenter Technology Corporation, Crucible Specialty Materials Corporation, and Electroally Corporation (collectively "Plaintiffs" or "Carpenter Technology"), failed to show good cause for the late filing, their application to file the motion for preliminary injunction out-of-time is denied.  Even were this Court to accept the late filing, this Court would deny Carpenter Technology's Motion for Preliminary Injunction for the reasons stated herein.

PROCEDURAL BACKGROUND

On September 1, 2006, the Department of Commerce published the amended final results in its administrative review of the antidumping order covering stainless steel bar from Germany for the 2004-2005 period of review.  Stainless Steel Bar from Germany, 71 Fed. Reg. 52,063 (Dep't Commerce Sept. 1, 2006) (amended final results of antidumping duty administrative review) ("Amended Final Results").  This was the third administrative review of this antidumping duty order.  On September 21, 2006, Carpenter Technology filed and served its complaint challenging the Amended Final Results with this court.  The deadline for Carpenter Technology to file a motion for preliminary injunction to enjoin the liquidation of the entries of subject merchandise related to this judicial review was October 26, 2006.  See USCIT R. 56.2(a).

Consol. Court No. 06-00286                                                    Page 3

However, Carpenter Technology did not submit its Motion for Preliminary Injunction until

November 15, 2006.  Defendants-Intervenor, BGH Edelstahl Frietal GmbH, BGH Edelstahl

Lippendorf GmbH, BGH Edelstahl Lugau GmbH, and BGH Edelstahl Siegen GmbH

(collectively "Defendants-Intervenor" or "BGH"), timely filed their opposition to the Motion for

Preliminary Injunction on December 5, 2006.  Although not requested by any party, on December

14, 2006, this Court convened a hearing on Carpenter Technology's out-of-time Motion for

Preliminary Injunction.  At the hearing, no additional evidence was offered. At the termination of

the hearing, this Court reserved decision.


                              FACTUAL BACKGROUND

        Plaintiffs filed and served their complaint in this action on September 21, 2006.  On

October 20,[1] 2006, counsel for BGH contacted Carpenter Technology's counsel by telephone to

ask whether Carpenter Technology would consent to BGH's intervention in the instant case.

(Pls.' Mem. in Resp. to Court's Direction of Dec. 7, 2006 ("Pls.' Mem.") 2; Defs.-Intervenor's

Supplemental Resp. in Opp'n to Mot. for Prelim. Inj. ("BGH's Suppl. Resp.") 2.)  Carpenter

Technology's counsel in turn asked BGH's counsel if BGH would consent to Carpenter

Technology's intervention in a separate but related case filed with this court by BGH and further

requested BGH's consent on a motion for preliminary injunction that Carpenter Technology was

---

        [1]This Court notes that Plaintiffs' counsel initially represented the date as October 19,
2006, but appears to have conceded that the event occurred on October 20, 2006.  (Prelim. Inj.
Hr'g Tr. 9:19-23, Dec. 14, 2006 ("I don't think that the parties disagree on the facts.  There may
be a slight difference in some of the dates that people have talked about, but I don't think that
that really makes much of a difference, if any, here.").)

planning to file in this matter.[2]  (Pls.' Mem. 2; BGH's Suppl. Resp. 2.)  While BGH's counsel

immediately consented to Carpenter Technology's intervention in BGH's action, BGH's attorney

responded that he would have to consult with his client before consenting to the preliminary

injunction motion.  (BGH's Suppl. Resp. 2.)  During this same conversation, Carpenter

Technology's counsel asked if BGH's counsel knew which government attorney had been

assigned to handle the instant litigation.  (Id.)  BGH's counsel replied that he did not know but

would find out.  (Id.)  The same day, October 20, 2006, BGH's counsel determined the

responsible government counsel and provided this information to Carpenter Technology's

counsel.  (Id.)  Carpenter Technology's counsel then requested, by voice message, the

Government's consent to the preliminary injunction motion, also on October 20, 2006.  (Id.)  The

Government's attorney replied, via electronic mail, that Carpenter Technology's counsel should

"send the draft motion for a [preliminary injunction] when [she had] it so [they] can review."  (E-

mail from Michael Panzera to Robin Gilbert & Marc Montalbine (October 20, 2006, 20:26 EST),

Defs.-Intervenor's Ex. 1 from Prelim. Inj. Hr'g, Dec. 14, 2006.)  Carpenter Technology's

counsel did not respond to this electronic mail message until November 8, 2006.  (Pls.' Mem. 3.)

On October 25, 2006, BGH communicated to its attorney that it would not consent to the

preliminary injunction motion.  (BGH's Suppl. Resp. Ex. 2.)  However, BGH's attorney did not

immediately convey BGH's intent to oppose the motion to Carpenter Technology's counsel.  The

following day, October 26, 2006, was the deadline for Carpenter Technology to timely file a

motion for preliminary injunction.

---

[2]BGH's action was filed as Court No. 06-00287, but both actions have now been
consolidated under this court number, Court No. 06-00286.  (See Order of Consolidation dated
Dec. 12, 2006.)

Consol. Court No. 06-00286                                                      Page 5

Almost two weeks later, on November 8, 2006, Carpenter Technology's counsel sent an electronic mail message to BGH's counsel and the Government's attorney purportedly transmitting a draft copy of the preliminary injunction motion and inquiring whether BGH consented to the motion.  (Pls.' Mem. 3; BGH's Suppl. Resp. 4.)  BGH's counsel immediately[3] responded that BGH would oppose the motion and informed Carpenter Technology's counsel that the draft copy of the motion had not been attached, as purported, to the previous message. (Pls.' Mem. 3; BGH's Suppl. Resp. 4.)  The Government consented to the Motion for Preliminary Injunction on November 15.  (Prelim. Inj. Mot. 2.)

On November 15, 2006, Carpenter Technology submitted to the court its partial consent Motion for Preliminary Injunction.  BGH timely filed its opposition to the motion on December 5, 2006.  In its opposition, BGH noted that the submission was out-of-time.  (Defs.-Intervenor's Opp'n to Mot. for Prelim. Inj. 2.)  BGH also challenged the motion on substantive grounds, arguing that the motion should be denied because Carpenter Technology failed to satisfy the requirements to obtain a preliminary injunction.  (Id. at 8.)

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(c)(2) (2000).

---

[3]BGH's counsel alleges that he first received the message from Carpenter Technology's counsel on November 9, 2006, because of the time difference between Germany, where BGH's counsel works, and Washington, D.C., where Carpenter Technology's counsel works.  BGH's counsel responded to the electronic mail from Carpenter Technology's counsel on November 9, 2006.  (BGH's Suppl. Resp. 4.)

Consol. Court No. 06-00286                                                    Page 6

**DISCUSSION**

I.      <u>Carpenter Technology Did Not Show Good Cause for Filing Out-of-Time.</u>

        United States Court of International Trade Rule 56.2(a) requires that "[a]ny motion for a

preliminary injunction to enjoin the liquidation of entries that are the subject of the action shall

be filed by a party to the action within 30 days after the date of service of the complaint, or at

such later time, for <u>good cause</u> shown." USCIT R. 56.2(a) (emphasis added). Because Carpenter

Technology filed its Motion for Preliminary Injunction outside the thirty-day time limit, this

Court will review Carpenter Technology's application[4] to file its motion out-of-time for a

showing of good cause. Neither this court's rules nor case law defines "good cause" as it applies

in Rule 56.2(a). However, this court's Rule 24(a), which deals with third-party intervention,

defines good cause as "mistake, inadvertence, surprise or excusable neglect" or "circumstances in

which by due diligence" the motion could not have been made within the thirty-day period.

USCIT R. 24(a).

        In the context of Rule 24(a), this court has held that a party's inability " 'to secure the

necessary approval' " of another party "until shortly before the filing" is not good cause for a late

filing. <u>Siam Food Prod. Pub. Co. v. United States</u>, 22 CIT 826, 827, 830, 24 F. Supp. 2d 276

(1998) (citation omitted). In <u>Siam Food</u>, two companies jointly filed two out-of-time motions to

intervene, explaining that they failed to file on time because they were unable to obtain approval

---

        [4]Although Carpenter Technology electronically submitted its Motion for Preliminary
Injunction out-of-time, the motion was not accompanied by a motion to file out-of-time. This
Court is treating Carpenter Technology's late-filed motion as an application to file the motion
out-of-time. Procedurally, the application to file out-of-time is a prerequisite to filing a tardy
motion for preliminary injunction because the underlying motion will only be accepted for filing
with a showing of good cause. Normally, this Court would expect that a motion to file out-of-
time would set forth the filing party's good cause for the late filing.

Consol. Court No. 06-00286                                                    Page 7

to file from one of the companies until shortly before the deadline to file.  <u>Id.</u> at 827.  The court

held that this was not good cause shown.  <u>Id.</u> at 830.  The court found it particularly troubling

"that almost any party could effortlessly give a reason for delay similar to the movants' excuse,"

with the result that "the actual time limit" would be rendered "superfluous."  <u>Id.</u>  In assessing

whether good cause has been shown in this matter, this Court will be instructed, but not

necessarily bound, by Rule 24(a) and its interpretation of good cause.

 In the instant matter, Carpenter Technology maintains that it has shown good cause for

filing its motion out-of-time.  Carpenter Technology states that it was waiting to hear if the

Government and BGH would consent to the motion.  (Prelim. Inj. Hr'g Tr. 12:6-17, Dec. 14,

2006.)  However, this court's rules do not require a moving party to obtain consent from other

parties in the case before filing a motion.  Court rules require only that "[b]efore . . . a motion for

a preliminary injunction to enjoin the liquidation of entries . . . is made, the moving party shall

<u>consult</u> with all other <u>parties to the action</u> to attempt to reach agreement, in good faith, on the

issues involved in the motion."  USCIT R. 7(b) (emphasis added).

 This Court appreciates the spirit of cooperation in which Plaintiffs' counsel sought

consent from BGH's counsel to Carpenter Technology's Motion for Preliminary Injunction.

However, Plaintiffs' counsel <u>need</u> not have sought consent from BGH's counsel at all, because

BGH was <u>not</u> a party to this action until <u>after</u> the due date for filing the motion for preliminary

injunction.[5]  Certainly, Plaintiffs' counsel should not have delayed filing the Motion for

_____

 [5]BGH became a party to this action on November 8, 2006, when this Court granted
BGH's motion to intervene.  (<u>See</u> Order granting Motion to Intervene dated Nov. 8, 2006.)
Indeed, if BGH had not filed a motion to intervene, or if this Court had denied the motion, BGH
would not have been a party to this action, notwithstanding Carpenter Technology's consent.

Consol. Court No. 06-00286                                                    Page 8

Preliminary Injunction to the detriment of her client while she awaited unnecessary consent from

a non-party to her client's litigation.

If Plaintiffs' counsel was convinced that consent was essential to the filing of Carpenter

Technology's Motion for Preliminary Injunction, she could have filed a timely motion with a

statement that Plaintiffs' counsel had requested but had not yet received consent from the

Government.  Alternatively, Carpenter Technology could have filed a motion for an extension of

time in which to file its motion for preliminary injunction.  Either action would have been

preferable to doing nothing.

In addition, Carpenter Technology did not exhibit diligence in requesting consent from

the Government, the only party to the action at the relevant time.  Carpenter Technology's

attorney did not appear to be aware of, or concerned about meeting, the deadline for filing a

motion for preliminary injunction.[6]  On October 20, 2006, only a few days before the motion was

actually due, Carpenter Technology's attorney had not yet made an effort to ascertain the name of

the Government's counsel.  As a result, she also had not sought the Government's consent to the

motion.  Indeed, this Court notes that it was BGH's attorney who provided Carpenter

Technology's counsel the name of the Government's counsel.  Further, after initially failing to

---

[6]In their Motion for Preliminary Injunction, Plaintiffs state that the submission was "a few days after the 30-day period."  (Pls.' Prelim. Inj. Mot. 2.)  In electronic mail correspondence among Carpenter Technology, the Government, and BGH, Carpenter Technology's attorney stated that the deadline to file a motion for preliminary injunction was November 1, 2006. (E-mail from Robin Gilbert to Michael Panzera & Marc Montalbine (Oct. 20, 2006, 16:09 EST), Defs.-Intervenor's Ex. 1 from Prelim. Inj. Hr'g, Dec. 14, 2006.)  However, in supplemental briefing provided by Carpenter Technology, the deadline for the motion is listed as October 23, 2006.  (Pls.' Mem. 2.)  The actual deadline was October 26, 2006.  This Court interprets the lack of consistency regarding the deadline as an indication of Carpenter Technology's counsel's lack of attention to detail.

Consol. Court No. 06-00286                                                    Page 9

obtain consent to the Motion for Preliminary Injunction from BGH's counsel,[7] Plaintiffs' counsel

made no further inquiries of BGH's counsel for nearly three weeks, until November 8, 2006,

when she attempted to circulate a draft of the Motion for Preliminary Injunction by electronic

mail.[8]  To facilitate the smooth functioning of the Court, parties should promptly respond to

requests like the one made by Carpenter Technology's counsel.  Nevertheless, Carpenter

Technology's counsel was required only to <u>seek</u> the consent of <u>parties</u> to the action and had a

duty to timely file the motion for preliminary injunction whether or not BGH and the

Government had consented.

  Further, the Government requested a draft of Plaintiffs' Motion for Preliminary Injunction

on October 20, 2006.  As Government counsel explained during the hearing, the Department of

Justice–as a matter of practice–requires the opportunity to review motions for preliminary

injunction prior to granting consent thereto.[9]  Plaintiffs' counsel makes no effort to explain why

---

  [7]Despite Plaintiffs' counsel's characterization of BGH's counsel's actions, this Court finds nothing about BGH's counsel's conduct to indicate that he "acted without good faith," a fact that might influence this Court's decision.  (Pls.' Mem. 4.)  Accordingly, this Court rejects Plaintiffs' counsel's request to sanction BGH's counsel.  (<u>Id.</u>)  It is not lost on this Court that Carpenter Technology's counsel immediately assumed bad faith as the reason for BGH's counsel's delayed response to Carpenter Technology's request for consent, while asking this Court's understanding for her own tardiness.  This Court also notes that Carpenter Technology was tardy in filing its papers for the hearing concerning Carpenter Technology's late-filed motion for preliminary injunction.

  [8]This Court does not imply that Plaintiffs' counsel needed to await consent from BGH to file the motion for preliminary injunction.  As discussed previously, because BGH was not yet a party to this action, BGH's consent or opposition to the Motion for Preliminary Injunction was not relevant.  However, Plaintiffs' counsel seems to have been under the mistaken opinion that BGH's consent was necessary, and her woeful effort to fulfill what she though to be her obligations is relevant to assessing whether good cause was shown for the late filing.

  [9]Government counsel explained that "the Justice Department does require a draft
(continued...)

she waited nearly three weeks–until November 9, 2006–to provide Government counsel with the requested draft of the Motion for Preliminary Injunction.  Plaintiffs' counsel acknowledges receipt of the Government's request and does not allege any incapacity to suggest that she was unable to satisfy the request expeditiously.[10]

In sum, Plaintiffs' counsel offered no good cause for the late filing.  This Court shares the concern expressed in <u>Siam Food</u>: if this Court were to hold that Carpenter Technology has shown good cause for filing out-of-time its Motion for Preliminary Injunction, almost any party could "effortlessly" meet the standard, and the Court's rules regarding this deadline would be "superfluous."  <u>Siam Food Prod.</u>, 22 CIT at 830.  Whatever the contours are of the good cause shown exception to this court's Rule 56.2(a), this case does not fall within the parameters.  Accordingly, Carpenter Technology's application to file its Motion for Preliminary Injunction out-of-time is denied.

I.      <u>Carpenter Technology Did Not Establish that a Preliminary Injunction is Warranted.</u>

Even were this Court to accept Carpenter Technology's late-filed Motion for Preliminary Injunction, this Court would nevertheless deny the motion.  A preliminary injunction is

---

[9](...continued)
application [for preliminary injunction] to be reviewed, because the Commerce Department needs to review it for accuracy, and the Justice Department needs to review it, to make sure that certain provisions are in conformance with things that we require."  (Prelim. Inj. Hr'g Tr. 33:8-14; <u>accord</u> <u>id.</u> at 42:11-24.)

[10]This Court notes that Plaintiffs' counsel is an experienced trade attorney (Pls.' Mem. 7) who has undoubtedly prepared numerous motions for preliminary injunction on behalf of her clients.  This Court further notes nothing in the substance of Plaintiffs' Motion for Preliminary Injunction to suggest that the motion was so complicated to justify a delay in its preparation and dispatch to Government counsel.

Consol. Court No. 06-00286                                                    Page 11

"extraordinary relief," and the "movant carries the burden to establish a right" to an injunction.

FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).  To prevail on its Motion for

Preliminary Injunction, Carpenter Technology would need to show:

> (1) that the movant is likely to succeed on the merits at trial; (2) that it will suffer
> irreparable harm if preliminary relief is not granted; (3) that the balance of the
> hardships tips in the movant's favor; and (4) that a preliminary injunction will not
> be contrary to the public interest.

Id.; accord Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983).

The Government consented to Carpenter Technology's Motion for Preliminary

Injunction, despite "disagree[ing] that plaintiff is likely to succeed upon the merits of its

complaint."  (Prelim. Inj. Mot. 5; accord Br. in Resp. to Ct. Order ("Gov't Br.") 3 ("We disagree

that Carpenter in likely to succeed upon the merits.").)  The Government stated that it assented to

Plaintiffs' motion because it believed that the court would "benefit from full briefing upon the

merits" on the issues presented in Carpenter Technology's complaint, regardless of Plaintiffs'

likelihood of success on the merits.  (Gov't Br. 4; accord Prelim. Inj. Hr'g Tr. 37:10-15.)

However, Zenith does not set forth a fifth factor–whether the court would benefit from a full

briefing–when considering the propriety of a preliminary injunction.  Accordingly, the

Government's consent to Plaintiffs' motion only for the purpose of full briefing is of little import

to this Court's determination concerning whether Plaintiffs satisfied their burden and merit the

preliminary injunction.

While "[n]o one factor, taken individually, is necessarily dispositive," a movant's "failure

to prove likelihood of success on the merits presents a formidable obstacle to the granting of an

injunction."  FMC Corp., 3 F.3d at 427, 431.  In fact, "[a]bsent a showing that a movant is likely

Consol. Court No. 06-00286                                                          Page 12

to succeed on the merits," the Court of Appeals for the Federal Circuit ("CAFC") has questioned

"whether the movant can ever be entitled to a preliminary injunction unless some extraordinary

injury or strong public interest is also shown."  Id. at 427.

 In the following sections, this Court examines Plaintiffs' showing on each of the factors.

Because Carpenter Technology has not shown a likelihood of success on the merits or that the

public interest is better served by granting a preliminary injunction, it has not met its burden to

establish that a preliminary injunction is warranted.  This Court, therefore, would deny–but for

the late submission–Carpenter Technology's Motion for Preliminary Injunction.


 **A. Immediate and Irreparable Injury**

 Commerce concluded the relevant administrative review and issued liquidation

instructions to the Bureau of Customs and Border Protection.  See Amended Final Results, 71

Fed. Reg. at 52,064.  As a result, Customs may liquidate the subject entries at any time.

Liquidation of the subject entries prior to the resolution of this action "would . . . eliminate the

only remedy available to [Plaintiffs] for an incorrect review determination by depriving the trial

court of the ability to assess" correct dumping duties on Plaintiffs' competitors during the period

of review.  Zenith, 710 F.2d at 810; accord Timken Co. v. United States, 6 CIT 76, 80, 569 F.

Supp. 65, 69 (1983) ("unless liquidation is enjoined [Plaintiff] will forever lose its statutory right

to challenge the alleged failure of the [International Trade Administration] to assess antidumping

duties against those entries").  Accordingly, this Court finds that Carpenter Technology met its

burden regarding this prong of the test, as "the consequences of liquidation . . . constitute

irreparable injury."  Zenith, 710 F.2d at 810.  However, Zenith does not require imposition of a

Consol. Court No. 06-00286                                                      Page 13

preliminary injunction simply because a domestic producer may be deprived of meaningful

judicial review if entries are liquidated.  Rather, the burden remains on Carpenter Technology to

sufficiently satisfy the remaining factors the court considers before granting a preliminary

injunction.


      **B.**      **Likelihood of Success on the Merits**

      Carpenter Technology challenges Commerce's decision to use sales price data supplied

by BGH, rather than applying adverse facts, in its calculation of U.S. price.[11]  (Am. Compl. ¶ 12.)

Carpenter Technology alleges that Commerce ignored the plain language of sections 1677a(a)

and (b) of the antidumping statute.  Section 1677a(a) provides:  "The term 'export price' means

the price at which the subject merchandise is first sold . . . to an unaffiliated purchaser in the

United States . . . ."  19 U.S.C. § 1677a(a) (2000).  Similarly, section 1677a(b) provides:  "The

term 'constructed export price' means the price at which the subject merchandise is first sold . . .

in the United States . . . to a purchaser not affiliated with the producer or exporter . . . ."  Id. at

(b).  The crux of Carpenter Technology's argument is that Commerce calculated U.S. price using

---

      [11]Carpenter Technology's amended complaint contains an additional count.  However, Count Two merely states that Commerce "otherwise understated the dumping margin for BGH." (Am. Compl. ¶ 14.)  A properly pleaded complaint must, at a minimum, provide the defendant with "fair notice of what [the] claim is and the grounds upon which it rests."  NEC Corp. v. U.S. Dep't of Commerce, 20 CIT 1483, 1485, 967 F. Supp. 1305, 1307 (1996) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)).  Because Carpenter Technology's complaint does not point to any particular actions taken or not taken by Commerce that would otherwise understate BGH's dumping margin, Count Two does not satisfy even the liberal standard of notice pleading and, therefore, does not state a claim upon which relief can be granted.

an inter-company transfer price supplied by BGH, rather than the price to the first unaffiliated

purchaser in the United States as the statute requires.[12]  (Id. at 13.)

However, Plaintiffs obfuscate the underlying substantive issue by conflating the terms

"price" and "invoice."  Carpenter Technology alleges that the invoices Commerce used to

establish U.S. price were issued by BGH's German mill to the company's U.S. subsidiary.

Plaintiffs insist that Commerce therefore "knowingly relied upon BGH's affiliate price as the

U.S. price."  (Pls.' Mem. 13 (footnote omitted) (emphasis added).)  As such, Carpenter

_____

[12]During the administrative review, Carpenter Technology also asserted that Commerce
calculated U.S. price based on the wrong universe of sales.  Carpenter Technology took the
position that the relevant sales occurred when BGH's affiliate issued an invoice to the unrelated
U.S. customer.  (Issues & Decision Mem. for the Final Results in the 2004-2005 Admin. Review
of the Antidumping Duty Order on Stainless Steel Bar from Germany (Jul. 17, 2006) ("Issues &
Dec. Mem.") 6.)  Commerce rejected Carpenter Technology's claim and stated that it "will not
use a date that falls after the date of shipment as the date of sale."  (Id.)  Commerce added that

> the invoice to the unaffiliated customer is issued after the merchandise is shipped
> directly from Germany to the customer.  Moreover, the merchandise is shipped
> from Germany to the unaffiliated customer on the same day the German mill
> issues its invoice to [BGH's affiliate].  Therefore, using shipment date as date of
> sale, [Commerce] arrives at the same place as BGH[,] and we determine that BGH
> has reported the correct universe of sales in the U.S. market.

(Id. (emphasis added).)

Although not pleaded in its Complaint, Carpenter Technology appears to attempt to
resurrect the universe of sales issue in this matter.  Carpenter Technology claims that

> this single action [Commerce's use of the German mill invoices to substantiate
> U.S. price] by Commerce had negative cascading effects on Commerce's dumping
> analysis, including not only the reliance by Commerce on the wrong price for U.S.
> sales, but also the reliance on the wrong date of customer payment, the wrong
> level of trade, the wrong classification of U.S. sales, and the wrong sales
> information generally, among other problems.

(Pls.' Mem. 13.)  Raising the universe of sales issue in this manner is insufficient, and this Court
finds no reason to read into Plaintiffs' Complaint a claim that does not appear therein.

Technology contends that Commerce's determination is not in accordance with law because it

contradicted the plain language of section 1677a.

Plaintiffs misstate Commerce's action in the underlying administrative review.

Commerce clearly set forth the agency's "reliance on <u>invoices</u>" from BGH to its U.S. affiliate.

(<u>Id.</u> (quoting Issues & Dec. Mem. 6-7) (emphasis added).)  Commerce explained that, despite

minor discrepancies between the German mill invoices and the invoices issued by the U.S.

subsidiary to unaffiliated U.S. purchasers, the German mill invoices accurately represented the

U.S. <u>price</u> of the goods and "do not warrant the application of [adverse facts] to BGH."  (Issues

& Dec. Mem. 6.)  "We have examined the record evidence . . . carefully and determine that the

difference is due to rounding.  Moreover, we determine that the difference is very small."  (<u>Id.</u> at

7.)

In addition, during oral argument, BGH's counsel demonstrated, using the verification

report and exhibits from the first administrative review, to the satisfaction of this Court that

Commerce's finding "that the difference is very small" was accurate.  (<u>Id.</u>; <u>see also</u> Prelim. Inj.

Hr'g Tr. 57:17-25, 70:14-76:19.)  This Court also recognizes that there appear to be slight

discrepancies between the German mill invoices and the prices paid by the U.S. customer.

However, this Court accepts BGH's explanation, and Commerce's acceptance thereof, that the

variance is due to rounding.  Further, the variances are so small as to be inconsequential.[13]

Plaintiffs further assert that "BGH <u>never</u> informed Commerce in any of its questionnaire

responses that it had reported an affiliate price rather than the price to the first unaffiliated

---

[13]In the example discussed during oral argument, the difference between the German mill invoice and BGH's Houston affiliate's invoice to the customer was 0.0067%.  (<u>See</u> Prelim. Inj. Hr'g Tr. 81:13-15.)

purchaser as U.S. price." (Pls.' Mem. 18.) Plaintiffs also attempt to impress upon the Court that

Commerce was unaware of BGH's invoicing methodology until this–the third–administrative

review. (Id. ("The first notice Commerce received that BGH had reported the wrong value for

the U.S. price was in Plaintiffs' case brief, after Plaintiffs had discovered an indication of this

through a painstaking analysis of BGH's data.").)

Plaintiffs' assertions are baseless. In the verification report from the first administrative

review, Commerce went to great lengths to describe the relationship among BGH, its Houston

affiliate, and a third-party service provider.

> [The third-party service provider] stated that it does not have the authority to
> confirm orders on behalf of BGH and that all order confirmations come from
> BGH in Germany. Once a confirmation is received, [the unrelated company]
> forwards the BGH confirmation on the customer (less information related to the
> commission due on the order) and books a sales order (to the customer) and a
> purchase order (from BGH) in the BGH Houston accounting system. The
> purchase order amount booked corresponds to the amount in the customer
> confirmation less the . . . commission. When BGH Houston receives the notice of
> shipment from the mill, they issue an invoice to the customer. Payment is made
> by the customer to BGH Houston and BGH Houston makes payment to BGH, less
> the . . . commission. BGH Houston retains [part] of the commission and [the rest
> of the commission] is paid to [the third party]. [Third-party] personnel confirmed
> that they never take physical possession of the product shipped from Germany and
> that no BGH product ever enters the [third party's] warehouse.

(BGH's Rebuttal Brief (3rd Admin. Rev.) (Apr. 6, 2006) App. 1 (Verification of the Resp. of

BGH Group, Inc. in the First (1st) Antidumping Admin. Rev. of Stainless Steel Bar from

Germany (Jan. 20, 2004)) ("Commerce Verification Report") at 9, Conf. Admin. R. Doc. 28.)

Further, Commerce explained its verification process in the first administrative review as

follows:

> Sales traces were performed on eight preselected U.S. market sales . . . to ensure
> that the data provided in the sales listing was correctly reported. Each preselected

> sale from BGH's sales listing was traced to sales related documents which
> included purchase orders, order confirmations, sales invoices, delivery notes, U.S.
> Customs entry summary, accounts receivable ledger, payment advice, record of
> payment, freight forwarder's invoice, and a credit note. . . . When reviewing the
> selected sales, <u>all verified as reported</u> [with some noted variances].

(<u>Id.</u> at 26 (emphasis added).)  Further, BGH reconfirmed the existence of the affiliate relationship

in its questionnaire responses in the current administrative review.  Responding to a request by

Commerce to furnish more information regarding the sales and distribution process used by BGH

and its U.S. subsidiary, BGH stated that the methodology was addressed in the first

administrative review:

> The Department has already thoroughly verified the role of BGH Specialty Steel
> Inc. in the sales and distribution process of subject merchandise and has
> consistently determined in all previous phases of this proceeding that BGH's U.S.
> sales are properly classified as [export price] sales.  <u>There have been no changes
> in the role of BGH Specialty Steel Inc. since the Department's last verification.</u>
> . . . Accordingly, as confirmed by the Department's verification and further
> demonstrated by the documents submitted in this review, BGH (Germany) issues
> the document that establishes the essential terms of sale with the unaffiliated U.S.
> customer.  BGH Houston [the U.S. subsidiary] does not take title to the
> merchandise at any point in the course of the sales process.  BGH (Germany)
> invoices the unaffiliated U.S. customer for the U.S. sales.  During the time
> covered by the period of review, invoices were sent by BGH (Germany) to the
> offices of [a third party who] would then forward them to the U.S. customer.  U.S.
> customer payments are sent to a lockbox at JPMorgan bank, which processes the
> checks and notifies [the third party] of the deposits.  The [third party] will then
> periodically transfer the amount received to BGH (Germany) after deducting the
> commissions due [the third party].

(BGH's First Supplemental Questionnaire Resp. (3rd Admin. Rev.) (Aug. 1, 2005), Conf.

Admin. R. Doc. 7 pp. 6, 8-9 (internal citations omitted) (emphasis added).)  Moreover,

Commerce noted in the Issues and Decisions Memorandum that "BGH reported its sales in this

review using the same methodology it used in prior segments of this proceeding.  In those earlier

segments, neither [Carpenter Technology] nor the Department raised any concerns about the methodology." (Issues & Dec. Mem. 7.)

This Court agrees with Plaintiffs that sections 1677a(a) and (b) are clear about the requirement that Commerce base U.S. price on the price to the first unaffiliated purchaser, and, therefore, the provision is not subject to agency discretion in the interpretation. However, this Court does not accept Plaintiffs' postulation that Commerce also has no discretion in determining the evidence the agency may accept as proof of the price paid by the first unaffiliated purchaser. The statute is silent on the matter of the requisite documentation respondents must submit to manifest the price paid by the first unaffiliated purchaser. Therefore, unless "arbitrary, capricious, or manifestly contrary to the statute," the manner of proof is left to the sound discretion of the agency. Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).

Given Commerce's verification of BGH's methodology in the first administrative review and BGH's representation that its pricing and invoicing practices had not changed, this Court finds no indication that full briefing on this issue will be likely to result in judgment in Plaintiffs' favor. Accordingly, this Court holds that Carpenter Technology has not established a likelihood of success on the merits.

Where–as here–the moving party has shown irreparable injury if the preliminary injunction is not granted, case law indicates that likelihood of success on the merits "must be balanced against the comparative injuries of the parties," and the standard may also be

demonstrated if the question before the court is "serious, substantial, difficult and doubtful."[14]

Ugine-Savoie Imphy v. United States, 24 CIT 1246, 1251, 121 F. Supp. 2d 684, 689 (2000)

(quotation and citation omitted); accord  SKF USA, Inc. v. United States, 28 CIT __, 316 F.

Supp. 2d 1322, 1329 (2004); Floral Trade Council v. United States, 17 CIT 1022, 1023 (1993).

> Where it is clear that the moving party will suffer substantially greater harm by
> the denial of the preliminary injunction than the non-moving party would by its
> grant, it will ordinarily be sufficient that the movant has raised 'serious,
> substantial, difficult and doubtful' questions that are the proper subject of
> litigation.

Ugine-Savoie, 24 CIT at 1251 (quoting PPG Indus., Inc. v. United States, 11 CIT 5, 8 (1980).

However, Carpenter Technology did not demonstrate that the question it raised was

"serious, substantial, difficult, or doubtful."  See Ugine-Savoie, 24 CIT at 1251 (citation

omitted).  Serious questions are those "which cannot be resolved one way or the other at the

---

[14]The CAFC has suggested yet a third, "less demanding," standard for establishing
likelihood of success: the fair chance standard.  U.S. Ass'n of Importers of Textiles & Apparel v.
United States, 413 F.3d 1344, 1347 (Fed. Cir. 2005).  The CAFC articulated this standard by
stating that "[e]ven if the balance of harms tips sharply in favor of the movant, . . . the movant
must demonstrate at least a 'fair chance of success on the merits' for a preliminary injunction to
be appropriate."  Id. (citation omitted).  However, the CAFC specifically declined to "resolve the
dispute over the legal standard applicable in the Federal Circuit" and did not reject the "serious,
substantial, difficult, and doubtful questions" standard applied by the trial court.  Id.  Rather, the
CAFC stated "that even assuming the fair chance standard to be the correct standard, the trial
court's interpretation of this standard was incorrect."  Thus, it appears that the CAFC may be
equating the fair chance and serious, substantial, difficult, and doubtful questions standards.
Given no clear direction by the CAFC, this Court adopts the latter as an alternative to a clear
showing of likelihood of success on the merits.

In any case, Carpenter Technology similarly failed to establish a fair chance of success on
the merits.  See id.  Plaintiffs pointed to nothing in section 1677a that limits Commerce's ability
to decide which evidence it will accept as adequate to determine U.S. price.  Because nothing
Plaintiffs presented raised a serious question that Commerce exceeded its discretion by accepting
BGH's German mill invoices to establish U.S. price of the subject merchandise, they have not
established a fair chance of success at trial.  Accordingly, Plaintiffs have not met even a reduced
showing of likelihood of success on the merits.

Consol. Court No. 06-00286                                                    Page 20

[preliminary injunction] hearing." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891,

895 (Fed. Cir. 1998) (quotation and citation omitted). The issue contested by Carpenter

Technology can be resolved on the papers submitted by the parties and the arguments presented

at the preliminary injunction hearing. The issue contested by Carpenter Technology existed in

the two previous administrative reviews, and "neither [Carpenter Technology] nor the

Department raised any concerns about the methodology." (Issues & Dec. Mem. 7.) If BGH's

use of the German mill invoices were so "serious, substantial, difficult, and doubtful," Ugine-

Savoie, 24 CIT at 1251 (citation omitted), to merit a preliminary injunction, this Court ponders

why Plaintiffs have not raised this issue in previous administrative reviews, as BGH's practice

with respect to reporting U.S. sales has not changed. Furthermore, Commerce verified the

methodology used by BGH in a previous administrative review. (See Commerce Verification

Report 9.) Moreover, Commerce explained to the parties that while relying on the German mill

invoices "led to certain errors . . . these errors were small or worked to BGH's detriment."

(Issues & Dec. Mem. 7.) Accordingly, this Court finds that Plaintiffs have failed to satisfy their

burden to establish a likelihood of success on the merits.


      **C.    Public Interest**

         Carpenter Technology has not shown that "the public interest would be better served" if

this Court were to grant the requested preliminary injunction. Zenith, 710 F.2d at 809. Because

"the public interest is served by 'ensuring that [Commerce] complies with the law, and interprets

and applies [the] international trade statutes uniformly and fairly,'" Ugine-Savoie, 24 CIT at

1252, 121 F. Supp. 2d at 690 (citation omitted) (first bracket added; second bracket original), a

Consol. Court No. 06-00286                                                    Page 21

preliminary injunction is generally in the public interest in order "to maintain the status quo of

the unliquidated entries until a final resolution of the merits" <u>SKF</u>, 28 CIT __, 316 F. Supp. 2d at

1329 (quoting <u>Smith-Corona Group v. United States</u>, 1 CIT 89, 98, 507 F. Supp. 1015 (1980)).

Nevertheless, it is not in the public interest to issue a preliminary injunction in an action where

there is no likelihood of success on the merits because doing so undermines longstanding judicial

precedents regarding the four-part balancing test.


**D.    Balance of Hardships**

Carpenter Technology has established that the balance of hardships favors the grant of a

preliminary injunction.  If a preliminary injunction is not granted, Carpenter Technology may

lose the ability to obtain meaningful judicial review.  <u>See</u> <u>SKF</u>, 28 CIT __, 316 F. Supp. 2d at

1328-29 ("Should the court . . . fail to issue a preliminary injunction, Plaintiffs' entries could be

liquidated, thus, permanently depriving them of . . . the ability to contest Commerce's final

results.)  On the other hand, if a preliminary injunction is granted, BGH will be harmed, as a

large amount of the company's working capital is tied up in antidumping duty cash deposits.[15]

---

[15]Carpenter Technology pointed out during oral argument that BGH made the business
decision to be the importer of record for the subject merchandise and, thus, subject to the
antidumping duties on the imported products.  (Prelim. Inj. Hr'g Tr.14:18-25.)  Therefore,
Carpenter Technology argued the potential hardship associated with that business decision is not
one with which the court should be concerned.  (<u>Id.</u> at 15:1-5.)  BGH agreed that it had
knowingly undertaken the risk of delayed liquidation for the length of an administrative review
and the additional time required for judicial review of a claim where there is a likelihood of
success.  However, BGH claimed that it did not knowingly accept the delay associated with
litigating a case where the opposing party has not shown at the preliminary injunction stage a
likelihood of success on the merits.  (<u>Id.</u> at 87:1-16.)  This Court agrees with BGH that the
hardship it would face from delayed liquidation is properly weighed against Carpenter
Technology's hardship resulting from denial of a preliminary injunction.

(See BGH's Suppl. Resp. 8.)  Yet, because the hardship faced by Carpenter Technology is

permanent, and more than merely economic, this Court finds that it outweighs the hardship that

BGH would suffer were the preliminary injunction to be granted.  This Court therefore finds that

the balance of the hardships tips in Carpenter Technology's favor.

     Nevertheless, this Court concludes that a preliminary injunction would not be warranted.

While establishing two of the four elements in the traditional four-part balancing test, irreparable

harm and the balance of hardships, Carpenter Technology failed to demonstrate a likelihood of

success on the merits.  In addition, the public interest would not be better served by the grant of a

preliminary injunction in the instant case.  The facts here are very similar to those of FMC

Corporation, in which the Federal Circuit affirmed the denial of a preliminary injunction due to

the movant's failure to substantiate likelihood of success on the merits.  FMC Corp., 3 F.3d at

431.  Like the plaintiffs in FMC Corporation, Carpenter Technology's failure to establish a

likelihood of success on the merits presents a "formidable obstacle to the granting of a

preliminary injunction."  Id.  Accordingly, this Court would–were it to have accepted Carpenter

Technology's motion for preliminary injunction for filing–deny the motion.

Consol. Court No. 06-00286                                                    Page 23

**CONCLUSION**

For the reasons cited herein, this Court holds that because Carpenter Technology failed to

show good cause for its late filing, its application to file out-of-time its Motion for Preliminary

Injunction is denied.  In the alternative, even were this Court to have accepted the late-filed

Motion for Preliminary Injunction, the motion would have been denied for Plaintiffs' failure to

sufficiently satisfy the four-part balancing test.


                                              /s/  Gregory W. Carman
                                             Gregory W. Carman


Dated: January 3, 2007
       New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                                    Deputy Clerk